UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRENDA MIHALIC, as Personal Representative
of the Estate of RYAN L. JOHNSON, Deceased,
Individually and on Behalf of Next of Kin,

                                    Plaintiffs,
                vs                                              5:03-CV-674

K-MART OF AMSTERDAM, NY DISTRIBUTION
CENTER, INC.; H & M COMPANY, INC.;
SIEMENS DEMATIC CORP.; and R.L. TORBECK
INDUSTRIES, INC.,
                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

H & M COMPANY, INC.,
                                    Third-Party Plaintiff,
                vs

WAREHOUSES BY DESIGN, INC.,

                                    Third-Party Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SIEMENS DEMATIC CORP.,
                                    Third-Party Plaintiff
                vs

WAREHOUSES BY DESIGN, INC.,

                                    Third-Party Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

R.L. TORBECK INDUSTRIES, INC.,

                                    Third-Party Plaintiff,
                vs

WAREHOUSES BY DESIGN, INC.,

                                    Third-Party Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

BRODER and REITER                           STEPHEN GIBSON SKINNER, ESQ.
Attorneys for Plaintiff                     JONATHAN C. REITER, ESQ.
Empire State Building
Suite 2811
350 Fifth Avenue
New York, New York 10118

DONOHUE SABO VARLEY & HUTTNER, LLP          ALVIN O. SABO, ESQ.
Attorneys for Defendant K-Mart
24 Aviation Road
P.O. Box 15056
Albany, New York 12212-5056

BRENNAN, REHFUSS & LIGUORI, PC              STEPHEN J. REHFUSS, ESQ.
Attorney for Defendant and
   Third-Party Plaintiff, H & M Company
Suite 202
19 Dove Street
Albany, New York 12210

THOMAS M. BONA, ESQ.                        ROBERT H. STEINDORF, ESQ.
Attorney for Defendant K-Mart;             STEPHANIE K. BELLANTONI, ESQ
   Defendant and Third-Party Plaintiff,
   Siemens Dematic Corp.;
   Defendant and Third-Party Plaintiff,
   R.L. Torbeck Industries, Inc.; and
   Third-Party Defendant, Warehouse by Design, Inc.
123 Main Street
White Plains, New York 10803

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

        This is a wrongful death and survival action brought by Ryan Johnson's

("decedent") personal representative, Brenda Mihalic ("plaintiff").  The decedent was killed on

the job while employed by third-party defendant Warehouse by Design, Inc. ("WBD").

Defendant K-Mart of Amsterdam, N.Y. Distribution Center, Inc. ("K-Mart") owned and operated a distribution center in Florida, New York, and hired defendant H & M Co., Inc. ("H&M") as the general contractor to upgrade the warehouse premises.  K-Mart also contracted with defendant Siemens Dematic Corp. ("Siemens") to install a conveyor system. Siemens subcontracted out part of the installation of the conveyer system to defendant R.L. Torbeck Industries, Inc. ("Torbeck"), which further subcontracted out part of the installation work to the decedent's employer, WBD.

Several motions are pending: (1) H&M's motion for summary judgment; (2) plaintiff's motion for partial summary judgment against all defendants, and cross-motion against H&M, as to liability under N.Y. Lab. Law § 240; (3) WBD's motion for summary judgment as to punitive damages and loss of consortium; (4) K-Mart, Torbeck, and WBD's motion to preclude the testimony of plaintiff's experts, Barry White and Alan Leiken; and (5) plaintiff's motion to preclude the testimony of defense expert Michael Kravitz.

Oral argument was heard on December 9, 2005, in Utica, New York.  Decision was reserved.

## II. FACTS

As just noted, defendant K-Mart owned and operated a distribution center in Florida, New York, and hired defendant H&M to construct the outer shell of the warehouse.  The contract between K-Mart and H&M also contained an "Additional Services" clause under which H&M would coordinate, and to some extent supervise, the other contractors on the job site.  William Howell ("Howell") was a superintendent on H&M's field supervision team.

The nature of H&M's supervisory role at the job site is disputed by the parties.  Both H&M and K-Mart maintain that each contractor and subcontractor on the project was

contractually responsible for compliance with safety standards applicable to their own employees.

However, at deposition, Howell conceded that H&M's role at the job site was akin to a general contractor. (Docket No. 94, Howell Dep. 9.)  His normal duties included walking the job site four times a day to oversee progress.  There were biweekly meetings to go over job scheduling and meetings with the project managers to review safety procedures.  Id. at 35-36.  The safety measures included the use of hard hats, safety glasses, and safety harnesses which are used when working more than six feet off the ground.  Id. at 37.  After H&M's portion of the project was complete, Howell remained at the job site from the end of March through July 2002.  Id. at 15 -16.  When asked about his responsibilities during that time, he replied, "I was still there managing, seeing after, you know, contractors for K-Mart."  Id. at 15.

On May 10, 2002, WBD's president Joseph Hendricks ("Hendricks") was not working on the job site and the decedent was acting foreman.  The accident occurred shortly after the decedent and his two co-workers, Matt Petrosky and Bill Kamer, returned from lunch.  Petrosky and Kamer resumed work under the mezzanine, with one on a scissors lift and one on an extendable boom forklift. (Docket No. 94, Petrosky 17-18.)  The decedent was charged with installing the railing along two sides of a mezzanine deck which sat in the corner of the warehouse.

As WBD's Hendricks was not going to be on the job site the day of the accident, H&M's Howell testified that they discussed the work plan for that day.  He recalled that "[Hendricks] was going to let the boys work underneath the mezzanine and just do some bracing off the scissors lift.  They weren't going to be on top of the mezzanine.  I think – I'm

99 percent sure he told me that on Thursday afternoon." (Docket No. 94, Howell 46.)  While no one actually saw what it was that caused the decedent to fall from the mezzanine, the placement of work materials at the scene following the accident, and the testimony of the co-workers provide a relatively undisputed version of events.

The decedent had installed railings for WBD before, but this one was different in that it was to be welded in place as opposed to being attached by bolts.  (Hendricks 32.)  According to Hendricks, previous procedure involved presetting or staging the railing pieces and installing them one after the other.  Id.  Up until the time of this accident Hendrick had never installed a lifeline to install railings, because, he asserts, lifelines are not necessary when a scissors lift is used.  (Hendricks 38, 40.)  Here, the decedent used a scissors lift to reach the mezzanine. (Hendricks 39; Petrosky 53.)  Thus there was no scaffolding along the edge of the mezzanine or a safety line on which to attach a laniard.  (Hendricks 40.)

For this particular railing, Hendricks explained that the pieces were large and heavy and he didn't want pallets of them on the mezzanine, so he instructed the decedent that the railing pieces should be unpacked on the floor and lifted into place one at a time with the crane or forklift.  (Hendricks 28, 45.)  The individual pieces would be held in place by one lift while the welder stood on another during the actual welding.  Id. at 30.  The record includes Work Order No. 050802, written by Hendricks, which explains that the railing was to be installed using a scissors lift.  There is some dispute, however, as to when Hendricks actually produced the document, at least in its type-written form.

The decedent had lifted a pallet of the railings to the mezzanine and was staging or placing the pieces where they would be installed. (Docket No. 94, Kamer 16, 27; Hendricks 31; Howell 47-48.)  It appears that the decedent was opening the pallet and was struck by a

-5-

railing piece or pieces as they tumbled out.  His co-workers heard a loud noise and looked in time to see the decedent as he hit the ground.  (Petrosky 33-34; Kamer 16.)  One railing piece fell to the ground with him and others were found lying on the mezzanine and to some extent overhanging its edge after the accident.  (Kamer 28; Howell 57.)

The pallet packaging is designed with a backstop such that the railing pieces will only fall in one direction when the steel strapping is removed.  (Hendricks 45-47; Petrosky 35.)  According to Hendricks, pallets are placed and faced such that any tumbling railing pieces will fall in towards the mezzanine as opposed to out towards the edge.  He opines that if the pallet had been facing the other direction, the accident would not have occurred. (Hendricks 47.)

Plaintiff alleges that as owner, general contractor and contractors with control over the project, defendants failed to meet their statutory duties to provide or ensure the application of proper safety measures which would have prevented the decedent's injuries and subsequent death.  Under New York State industrial codes, decedent should have been provided with, and used, proper fall-protection.  Plaintiff brings suit pursuant to NY Lab. Law §§ 200, 240(1), 241(6) and for punitive damages.

## III.  DISCUSSION

### A.  Summary Judgment

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient

disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).  Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  The Court is "to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." Schwimmer v. Kaladjian, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing Anderson, 477 U.S. at 249-50).

### B. __H&M's Motion for Summary Judgment__

As noted, plaintiff brings suit pursuant to N.Y. Lab. Law §§ 200, 240(1) and 241(6). Defendant H&M moves for summary judgment on grounds that it may not be held liable under any of the three provisions.

### 1. __N.Y. Lab. Law § 200__

Section 200 codifies the "common-law duty of an owner or general contractor to provide safe place for workers at the construction site."  Nowak v. Smith & Mahoney, P.C., 110 A.D.2d 288, 289 (N.Y. App. Div. 1985).  To impose liability under N.Y. Labor Law § 200 for a construction accident on a party who is neither the general contractor nor the project owner, it must be shown that the party had the authority to control the activity that produced the injury and the authority to insist that proper safety practices be followed.  Lopes v. Interstate Concrete, Inc., 293 A.D.2d 579, 579-80  (N.Y. App. Div. 2002) (citing Russin v. Louis N. Picciano & Son, 54 N.Y.2d 311 (N.Y. 1981)).  Thus, a granting of summary judgment requires that defendant H&M demonstrate that it had no authority to control the activity that brought about the subcontractor's injury to enable it to avoid or correct the unsafe condition.  See Bornschein v. Shuman, 7 A.D.3d 476, 479 (N.Y. App. Div. 2004).

The parties disagree as to the characterization of H&M's work at the job site.  Plaintiff argues that H&M exercised actual control over safety conditions as the agent and/or project manager for K-Mart pursuant to the "Additional Services" clause in the contract between K-Mart and H&M, wherein H&M provided a "field supervision team."  Liability turns on the actual duties performed by this team, which included H&M's superintendent, Howell.

 H&M asserts that the purpose and actual function of this team was to coordinate the subcontractors use and timing of warehouse space in order to insure an efficient job site.

-8-

H&M argues, and K-Mart representatives agree, that these duties did not include supervision of the subcontractors or their employees.  If true, H&M would not be liable under § 200.  <u>See</u> <u>D'Antuono v. Goodyear Tire & Rubber Co. Chem. Div.</u>, 231 A.D.2d 955, 955 (N.Y. App. Div. 1996) ("The contractual duty to oversee performance of work, inspect work site, and ensure compliance with safety regulations does not constitute supervision and control over subcontractor's methods of work.").

However, when a defendant's duties extend beyond coordination to actual supervision, liability attaches.  <u>See</u> <u>Moore v. Metro N. Commuter R.R</u>, 233 A.D.2d 192, 192-93 (N.Y. App. Div. 1996) (summary judgment precluded where "contract representative testified that he was stationed at work site, inspected work on daily basis, may have kept daily progress report as of time of accident, had authority to stop performance of any unsafe work practices and to order correction of unsafe work conditions, and prepared report as to plaintiff's accident"); <u>Brennan v. 42nd St. Dev. Project, Inc.</u>, 10 A.D.3d 302, 302 (N.Y. App. Div. 2004) (summary judgment precluded where the record revealed that the company had a safety representative on the job site who checked contractors for compliance with all city safety regulations, held weekly safety meetings to ensure an understanding of the safety procedures and requirements, and withheld their payment if it was determined that there was no compliance).

According to Hendricks, H&M required weekly safety meetings, had the power to remove a contractor from the site, and generally acted as a general contractor in overseeing all the contractors.  Howell testified that he took daily walks to inspect the job site, including the use of safety equipment, and he wrote the accident report concerning the decedent's fall.  As to his role in enforcement of safety measures, Howell explained, "If you see something

wrong, then you would go to the foreman of this person and have it fixed." (Howell 39.)

Moreover, Howell testified that he remained at the job site from the end of March through

July 2002, after H&M's portion of the project was complete.  Id. at 15.  When asked about his

responsibilities during that time he replied, "I was still there managing, seeing after, you

know, contractors for K-Mart."  Id.

It would be reasonable for a jury to conclude that H&M exercised control over the

activity that resulted in decedent's death and had the authority to insist that proper safety

practices be followed.  Questions of fact as to H&M's authority and control of the job site

preclude a finding of summary judgment on the N.Y. Lab. Law § 200 claim.

### 2. N.Y. Lab. Law § 240(1)

Defendant H&M's motion for summary judgment as to liability under § 240(1) rests on

the argument that H&M is not the owner, general contractor, or a statutory agent of either

actor.

Contractors will not be held liable "unless they have been delegated the authority to

supervise and control that portion of the project on which the injury occurs.  Where such a

delegation has been made, however, the prime contractor becomes a statutory agent of the

owner or the general contractor."  Kenny v. Fuller, 87 A.D.2d 183, 188-89,  (N.Y. App. Div.

1982)(citations omitted); Russin, 54 N.Y.2d at 318; see also Blake v. Neighborhood Hous.

Serv. of New York City, Inc., 1 N.Y.3d 280, 293 (N.Y. 2003) ("An agency relationship for

purposes of § 240(1) arises only when work is delegated to a third party who obtains the

authority to supervise and control the job.").  Defendant argues that plaintiff cannot

demonstrate that H&M acted as K-Mart's agent or as general contractor on the project.

The evidence of H&M's supervisory activity and control over the job site listed above under the § 200 claim is sufficient to raise questions of fact as to whether H&M acted as a statutory agent of K-Mart.  See Kenny, 87 A.D.2d at 190 ("A general construction manager charged with the duty of co-ordinating all aspects of a construction project is a contractor with nondelegable duties under N.Y. Lab. Law § 240 and § 241.").   Summary judgment will not be granted on grounds that H&M cannot be deemed a statutory agent.

### 3. N.Y. Lab. Law § 241(6)

In moving for summary judgment under § 241(6), the defendant repeats its argument that it may not be considered a statutory agent of K-Mart in order for liability to attach.  The argument is rejected for the reasons articulated above; there is sufficient evidence in the record to demonstrate that defendant H&M acted as such an agent.

Thereafter, defendant argues that plaintiff will not be able to prove the substantive elements required to prove a § 240(6) claim.

> [I]t is well settled that Labor Law § 241 (6) imposes a nondelegable duty requiring compliance with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor.  To make out a prima facie cause of action pursuant to Labor Law § 241 (6), plaintiffs must allege that defendant violated a rule or regulation of the Commissioner of Labor that sets forth a specific standard of conduct as opposed to a reiteration of common-law principles.

Borowicz v. International Paper Co., 245 A.D.2d 682, 684 (N.Y. App. Div. 1997) (citations and quotation omitted).  Plaintiff alleges violations of numerous regulations, but defendant argues that she will not be able to prove any violation, and thus summary judgment is appropriate.

Without expressing opinion as to the viability of a claim based on the other alleged violations, questions of fact remain as to at least one, and thus summary judgment shall not be granted.  12 N.Y. Code R. Reg. § 23-1.7 provides

> (b) Falling hazards.
>         . . .
> (iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:
> (a) Two-inch planking, full size, or material of equivalent strength installed not more than one floor or 15 feet, whichever is less, beneath the opening; or
> (b) An approved life net installed not more than five feet beneath the opening; or
> (c) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage.

Plaintiff's expert contends that the decedent was not provided with an appropriate safety belt and a place to secure it, or provided with an adequate alternative.  The defendants' expert asserts that the scissor lift constitutes adequate fall protection and notes that it is considered a portable scaffold.  Therefore, defendant's motion for summary judgment on grounds of insufficient evidence to prove a violation of the industrial code will be denied.

**C.  Plaintiff's Motion for Partial Summary Judgment against All Defendants and Cross-Motion against H&M  as to Liability under N.Y. Lab. Law § 240(1)**

Plaintiff moves for summary judgment as to liability pursuant to § 240(1) against all the defendants and in a cross-motion against defendant H&M.  Plaintiff argues that the defendants' assertion of the recalcitrant worker defense does not preclude such a finding and there are no questions of fact as to whether defendants breached their statutory duty.

**1.  Recalcitrant Worker Defense**

In response to plaintiff's motion, the defendants assert that the decedent was a recalcitrant employee in failing to utilize safety measures and/or follow instructions, and was

the sole cause of his own death.  H&M argues that the record is clear that the decedent was instructed to use a scissors lift when installing the railing on the decking, and more generally, to wear a safety harness when working at that height.

As a preliminary matter the parties dispute whether the Dead Man's Statute precludes the testimony of Hendricks in demonstrating this defense, particularly at the summary judgment stage.  It is not necessary to reach the issue because the defense is not viable even considering his testimony.

"While it is well settled that an injured worker's contributory negligence is not a defense to a Labor Law § 240 (1) claim, the 'recalcitrant worker' defense may allow a defendant to escape liability under section 240 (1)."  Gordon v. Eastern Ry. Supply, 82 N.Y.2d 555, 562-563 (N.Y. 1993) (citations omitted.)  "Where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability. Cases upholding the so-called 'recalcitrant worker' defense exemplify this rule."  Cahill v. Triborough Bridge & Tunnel Auth., 4 N.Y.3d 35 (N.Y. 2004); see e.g., Harrington v. State of New York, 277 A.D.2d 856, 858 (N.Y. App. Div. 2000) (defense not applicable when plaintiff intentionally chose to slide down a tarp to the ground where another safety device was available).

"The defense requires a showing that the injured worker refused to use the safety devices that were provided by the owner or employer."  Gordon, 82 N.Y.2d at 562-563 (citations omitted).  As the New York Court of Appeals explained, a defendant will escape liability when a jury could conclude that (1) plaintiff had adequate safety devices available; (2) he knew both that they were available and that he was expected to use them; (3) he chose for no good reason not to do so; and (4) had he not made that choice he would not have been injured.  Cahill,  4 N.Y.3d at 40.

The parties focus on the nature and communication of the instructions provided to the decedent.  Assuming without deciding that an adequate fall protection was provided, the instruction given regarding its use is a necessary portion of the defense, but it is not sufficient.  The defendant must demonstrate a *purposeful* or *deliberate refusal* "to heed a specific order to use a safety device that is immediately and visibly available to the worker or actually put in place." McGuire v. State, 273 A.D.2d 822, 823 (N.Y. App. Div. 2000).

It is undisputed that the decedent was working on the mezzanine without wearing a safety harness attached to a lifeline.  This is not in compliance with the general instruction and training that he should not work at such a height without using fall protection.  However, this failure to comply with the general instruction to always wear a harness does not demonstrate that he was a recalcitrant worker.  It is not sufficient to demonstrate that the decedent ignored an instruction to avoid an unsafe practice.  See Akins v. Central N.Y. Reg'l Mkt. Auth., 275 A.D.2d 911, 911-12  (N.Y. App. Div. 2000) (citing Gordon, 82 N.Y.2d at 563 wherein there was no issue of fact as to the defense where defendant repeatedly told plaintiff employee to use a scaffold, not a ladder, but plaintiff did anyway); Tennant v. Curcio, 237 A.D.2d 733, 735 (N.Y. App. Div. 1997) (employer's general instruction that the workers not utilize a ladder without first securing it to the building was insufficient to create a factual issue on the recalcitrant worker defense); Powers v. Lino Del Zotto & Son Builders, Inc., 266 A.D.2d 668, 670 (N.Y. App. Div. 1999) (no issue of refusal where stepladders were available at the job site and plaintiff was instructed not to attempt to install a beam by himself, not to stand on the sawhorse, and to use a step ladder but he did anyway); Adams v. Cimato Bros., 207 A.D.2d 997, 997 (N.Y. App. Div. 1994) (defense may not be invoked where plaintiff twice disobeyed instructions to return to the peek of the roof and remain there until the scaffolding

was put in place); Stolt v. General Foods Corp., 81 N.Y.2d 918, 919 (N.Y. 1993) (the fact that the plaintiff had been instructed not to climb a ladder unless someone else was there to secure it for him was not a basis for the defense).

Moreover, it is not disputed that there was no lifeline installed. Hendricks testified that the decedent had a harness and there was a lifeline on site which the decedent could have installed as one method of fall protection. But, the mere presence of the safety device on site is not sufficient to support the defense. See Heath v. Soloff Constr., Inc., 107 A.D.2d 507 (N.Y. App. Div. 1985). The argument that the decedent should not have been working on the mezzanine without wearing a safety harness after he had been instructed to wear one at such heights is insufficient to raise a factual issue as to his recalcitrance.

If there is a legal issue of recalcitrance it must be the decedent's failure to use the scissors lift as he was not working from it as allegedly instructed. Plaintiffs alleged negligence is not the issue, but rather, whether it can be determined that he deliberately refused to use a safety device. The defense will only bar the claim where the evidence supports a reasonable inference of recalcitrance as opposed to negligence. See e.g., Haystrand v. County of Ontario, 207 A.D.2d 978 (N.Y. App. Div. 1994) (failure of plaintiff to use the locking devices on the scaffold would only go to the issue of his own negligence, not the recalcitrant worker defense).

> While refusal to use safety equipment can be implied from a worker's conduct and not just from his words, the mere fact that a worker has been repeatedly instructed to use certain equipment does not in itself support an inference of deliberate refusal when he has failed to do so. Stated somewhat differently, deliberate refusal cannot be inferred from unexplained nonuse. If mere negligent omission is at least an equally probable inference, either conclusion would be merely speculative; and since mere negligent omission to use an available safety device despite instructions to do so will not support the defense, the defense must fail.

Peterson v. Barry, Bette & Led Duke, Inc., 171 Misc. 2d 346, 348-49 (N.Y. Misc. 1996) (citations omitted).

The question becomes whether the evidence in the record is sufficient to demonstrate any particular choice on the decedent's part in relation to the use of the scissors lift. The instruction that was disregarded related to installation procedure wherein he apparently resorted to a previous installation method. There is no indication as to why he would change procedure. As foreman on the job, he may have believed it would be quicker or easier. Regardless, that decision cannot be construed as a deliberate refusal to use a safety device in the way that the case law recognizes such refusals.

One set of cases where plaintiffs could be considered recalcitrant include allegations that the use of the safety device had become an issue between the worker and the employer after which the employee intentionally disregards the direction to use the available device. See Cahill, 4 N.Y. 3d at 38 (several weeks before the accident plaintiff's supervisor "caught him" climbing a form without using a safety line); Jastrzebski v. North Shore Sch. Dist., 223 A.D.2d 677, 680 (N.Y. App. Div. 1996) (plaintiff's supervisor admonished him just prior to the accident giving him very specific orders not to use the ladder and to use the available scaffold and he climbed the ladder as soon as the supervisor turned his back and began to walk away); Hickey v. C.D. Perry & Sons, 223 A.D.2d 799, 800 (N.Y. App. Div. 1996) (plaintiff fell from a plank crossing a sluiceway that the defendant had ordered removed more than once); Lozada v. State, 267 A.D.2d 215 (N.Y. App. Div. 1999) (the plaintiff conceded that he had been repeatedly told to wear a safety belt when working on the platform); Palacios v. Lake Carmel Fire Dep't, Inc., 15 A.D.3d 461 (N.Y. App. Div. 2005) (on the very morning of

the accident the owner instructed plaintiff not to use the ladder, but rather, the scaffold he used the day before).  There is nothing in the record which reflects any communication of this sort between the decedent and his employer.

In another set of cases, plaintiffs could be considered recalcitrant workers where they were practically in the process of using the device, or at least in the regular course of its use, and made a choice not to continue using the device.  In Watso v. Metropolitan Life Ins. Co., 228 A.D.2d 883, 884 (N.Y. App. Div. 1996), an employee could be considered recalcitrant where it was undisputed that during the course of his work he was wearing a safety belt and the defendants had installed a static line upon which he could tied-off.  In Vasquez v. G.A.P.L.W. Realty, 236 A.D.2d 311, 312 (N.Y. App. Div. 1997), there was evidence that suggested that plaintiff employee wore a safety belt, but did not attach it to the available line as he had earlier in the day.  In Job v. 1133 Bldg. Corp., 251 A.D.2d 459 (N.Y. App. Div. 1998), plaintiff had previously always worn the belt and it was available on the date of the accident.  See Negron v. City of New York, 2005 N.Y. Slip Op. 7509 (N.Y. App. Div. 2005) (sole proximate cause of the accident was plaintiff's failure to tie-off again after disconnecting his laniard).

These cases seem to define deliberate refusal closer to negligence than a demonstration of actual recalcitrance, nonetheless, that type of plaintiff conduct is not alleged in this case.  Here it is not an issue of whether plaintiff was using the scissors lift as a safety device and chose to leave the lift during his work.  He had used the lift as transportation and left it to work on the mezzanine which included opening a pallet of railings

which tumbled out.  Even if this account of the accident is not credited, it is clear that plaintiff was not installing or welding the railing or using the lift in the course of his work when he fell.

There is no evidence to support an inference that he deliberately or purposefully refused to use the scissor lift.  According to Hendricks, the problem was not that he was supposed to be using it to stage the rails, it is that he wasn't supposed to be staging the rails. A deliberate change in installation procedure, absent any other evidence, is not sufficient to support any particular inference regarding the use of any particular safety device, and thus that he was recalcitrant.

Sometimes the application of the recalcitrant worker defense focuses more directly on plaintiff's conduct as the sole proximate cause of the accident.  As one federal district court recently explained the defense:

> The recalcitrant worker defense is merely an alternative description of the failure of a plaintiff to demonstrate that a violation of § 240(1) proximately caused his injury. The recalcitrant worker has, by definition, been provided with adequate and safe equipment to complete his task. In other words, there is no violation of § 240(1). Despite being properly instructed on the use of the protective equipment, which is readily available to her, she obstinately (or recalcitrantly) refuses to use that equipment.

Wojcik v. 42nd St. Dev. Project, Inc., 386 F. Supp. 2d 442, 452 (S.D.N.Y. 2005) (citation omitted.)  In this vein, the defendants argue that summary judgment is precluded because the decedent was the sole proximate cause of his death.  This assertion is rejected. Assuming that the decedent was partially responsible for his own death, plaintiff has demonstrated that the various defendants may be considered a cause of his death.  See Pardo v. Bialystoker Ctr., 308 A.D.2d 384, 385 (N.Y. App. Div. 2003) ("[E]ven if plaintiff could be deemed recalcitrant for having not used a harness, there would still be a jury question as

-18-

to whether the failure to provide a properly secured scaffold was a proximate cause of the accident."). At the least, questions of fact remain as to the adequacy of the safety measures provided. Moreover, a reasonable jury may not credit the evidence that the decedent was instructed to use the scissors lift.

The defendant has failed to demonstrate or raise a question of fact that the decedent was a recalcitrant worker, and/or that he was the sole cause of his own death. The recalcitrant worker's affirmative defense will be dismissed. However, that does not mean that plaintiff's motion for partial summary judgment on liability will be granted.

### 2. **Adequate Fall Protection**

N.Y. Lab. Law § 240(1) imposes "absolute liability on owners and contractors, or their agents, for any breach of the statutory duty that proximately causes injury." Abbatiello v. Lancaster Studio Assocs., 3 N.Y.3d 46, 50 (N.Y. 2004) (citing Blake, 1 N.Y.3d at 287). The provision requires that owners, contractors or their agents "shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." N.Y. Lab. Law § 240 (McKinney 2002).

Plaintiff alleges that defendants did not provide the decedent with adequate safety measures. More specifically, there was no lifeline or anything else for the decedent to tie his safety harness to while he worked 30 feet above the ground. According to Hendricks and defendants' expert, the use of a scissors lift meets the statutory requirement of adequate fall protection, and thus, if the lift was used, the use of a lifeline was not required. (Docket No.

-19-

94, Hendricks Dep. 38.)  A reasonable jury which credits this testimony could conclude that adequate fall protection measures were provided and that the statute was not violated.

Questions of fact remain as to the existence of a statutory violation.  Plaintiff's motion for partial summary judgment as to liability under § 240(1) against all the defendants, and defendant H&M in particular in its cross-motion, will be denied.

### D.  WBD's Motion for Summary Judgment as to Punitive Damages and Loss of Consortium

Third-party defendant WBD moves for summary judgment as to plaintiff's claim for punitive damages and the loss of consortium claim.  Plaintiff did not oppose WBD's arguments as to punitive damages and therefore that claim is deemed abandoned.  See Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases).

Anticipating plaintiff's choice of law argument, WBD argues that loss of filial consortium claims are not permitted under either New York or Pennsylvania law.  Plaintiff undertook a choice of law analysis and concluded that Pennsylvania law applies to the claim. No such analysis is required as there is no conflict between New York and Pennsylvania law. Neither state recognizes such claim.  Blair v. Mehta, 67 Pa. D. & C.4th 246, 265 (Pa. D. & C. 2004) (citing Quinn v. Pittsburgh, 243 Pa. 521 (Pa. 1914)); Dunphy v. J & I Sports Enters., 297 A.D.2d 23 (N.Y. App. Div. 2002) (citing Valicenti v. Valenze, 68 N.Y.2d 826, 829 (N.Y. 1986)).

Plaintiff's reliance on Blair is unavailing as that court simply distinguished between the pecuniary loss recoverable under wrongful death statutes and the solatium loss recoverable only by way of a loss of consortium claim.  The court did not hold that the latter type of loss is

recoverable under the wrongful death statute.  It clarified that only damages arising from the

loss of companionship connected to the benefits associated with the society and comfort

may be recovered.  <u>Blair</u>, 67 Pa. D.C. 4th at 261-62.

WBD's motion for summary judgment as to punitive damages and the loss of

consortium claim will be granted.

### E.  <u>K-Mart, Torbeck and WBD's Motion to Preclude the Testimony of Plaintiff's Experts, Alan Leiken and Barry White</u>

Under the Federal Rules of Evidence, "the trial judge must ensure that any and all

scientific testimony or evidence admitted is not only relevant, but reliable."  <u>Daubert v. Merrell</u>

<u>Dow Pharms.</u>, 509 U.S. 579, 589 (1993); <u>see</u> Fed. R. Evid. 702.  Plaintiff's expert Alan

Leiken ("Leiken") intends to testify as to his opinion of the amount of damages plaintiff has,

and will, suffer on account of the defendants' alleged negligence.  Defendants and third-party

defendant object to the underlying assumptions upon which he bases his estimates.  This

complaint goes to the weight, not the admissibility of his testimony.  Any deficiencies in

Leiken's testimony may be adequately addressed in cross-examination at trial.

Plaintiff's expert Barry White ("White") intends to testify as to his opinion that the

defendants' conduct was not in compliance with industrial codes and resulted in the

decedent's accident and death.  Defendants and third-party defendant object to the

testimony on two grounds.

First, they assert that White is not qualified.  He has a masters degree in Public

Administration and 20 years experience in working for OSHA.  His work with OSHA consists

of developing and enforcing safety policies related to workplace and fall safety.   They also

object to his qualifications on grounds that he does not have an engineering degree or experience with New York State codes.   This argument is rejected.  White has the experience necessary to apply New York State codes to the facts and circumstances of the safety conditions at the instant job site.

Second, they argue that White's testimony is flawed in that he misconstrued deposition testimony and failed to consider all the pertinent parts of the record.  As with their objection to Leiken's testimony, this complaint goes to the weight, not the admissibility of his testimony.  Any deficiencies in that testimony may be adequately addressed in cross-examination at trial.

The motions to exclude the testimony of plaintiff's experts, Leiken and White, will be denied.

### F.  <u>Plaintiff's Motion to Preclude the Testimony of Defense Expert Michael Kravitz</u>

Defendants' expert Michael Kravitz ("Kravitz") intends to testify as to his opinion of their compliance with governing legislation in the performance of the construction activity at issue.  He opines that "as long as Mr. Johnson was working from the scissor lift he would not have been required to wear fall protection . . . [He] could have tied off on the guardrail of the scissor lift."  (Docket No. 121, Kravitz Report 7.)

Plaintiff does not attack the methodology or scientific reasoning of Kravitz's testimony or his qualifications.  Plaintiff complains that Kravitz never verified the underlying facts of his report, specifically the existence of the scissor lift and/or its particular specifications.

As the Second Circuit explained, "an expert may rely on data that she did not personally collect. The Federal Rules of Evidence specifically provide that an expert may rely on facts or data 'perceived by *or* made known to the expert at or before the hearing.'" Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94-95 (2d Cir. 2000) (quoting Fed.R.Evid. 703).  Mr. Kravitz relied on the following: deposition testimony of Hendricks, Howell, the decedent's co-workers, and representatives of Siemens and Torbeck; photographs of the scene; the pertinent contracts between the parties; Seimens safety manual; the WBD handbook; engineering designs; the OSHA report; the applicable industrial regulations and Work Order. No. 050802.  (Kravitz Report 7.)  Kravitz is permitted to offer an opinion based on his review of these documents.

   Plaintiff's complaints go to the weight, not the admissibility of his testimony.  Any deficiencies in that testimony may be adequately addressed in cross-examination at trial. Plaintiff's motion to exclude the testimony of Kravitz will be denied.

## IV.  CONCLUSION

   Defendant H&M's motion for summary judgment will be denied as questions of fact remain as to its authority and control of the job site.  Plaintiff's motion for partial summary judgment against all defendants and cross-motion against H&M as to liability pursuant to N.Y. Lab Law § 240(1) will be denied.  The recalcitrant worker defense will be dismissed. Questions of fact remain as to whether defendants breached their statutory duty.  Plaintiff did not oppose WBD's motion for summary judgment as to the punitive damages.  The filial loss of consortium claim will be dismissed as that claim is not permitted under either New York or Pennsylvania law.

The instant challenges to expert testimony went to the weight not the admissibility of the testimony.  Thus, K-Mart, Torbeck, and WBD's motion to preclude the testimony of Barry White and Alan Leiken, and plaintiff's motion to preclude Michael Kravitz's testimony will be denied.

Therefore it is

ORDERED that

1.  Defendant H&M's motion for summary judgment is DENIED;

2.   Plaintiff's motion for partial summary judgment against all defendants and cross-motion against H&M as to liability pursuant to N.Y. Lab Law § 240(1) is DENIED;

3.  The recalcitrant worker affirmative defenses are DISMISSED;

4.  Third-party defendant WBD's motion for summary judgment as to the punitive damages and loss of consortium is GRANTED and those claims are DISMISSED;

4.  Defendant K-Mart, Torbeck, and third-party defendant WBD's motion to preclude the testimony of Barry White and Alan Leiken is DENIED; and

5.  Plaintiff's motion to preclude the testimony of Michael Kravitz is DENIED.

IT IS SO ORDERED.

David N. Hurd
District Judge

Dated:   January 4, 2006
         Utica, New York.

-24-